IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN RE SPRINT NEXTEL DERIVATIVE            Case No. 12-2242-JWB-KGG (Lead Case[1])
LITIGATION

**MEMORANDUM AND ORDER**

This matter is before the court on motions to dismiss by Defendant Sprint Communications, Inc. and by the individually-named Defendants.[2] (Docs. 88, 91.) The motions have been fully briefed. (Docs. 96, 97, 98-1, 99-1,[3] 111, 112, 113.) For the reasons stated herein, Defendants' motions to dismiss are GRANTED.

**I. Facts**

The following summary of allegations is taken from Plaintiffs' consolidated and verified amended complaint. (Doc. 82-1.[4]) Sprint Communications, Inc. (hereinafter "Sprint" or "the Company") is a mobile telecommunications service provider that does business nationally and internationally. Sprint is a nominal defendant in this derivative action, which is brought by several shareholders on behalf of Sprint.

---

[1] Five shareholder derivative suits were consolidated in this action for all purposes: *Pagano v. Hesse, et al.*, No. 12-2242-JWB; *Hartleib v. Hesse, et al.*, No. 12-2266-JWB; *Rich, et al. v. Hesse, et al.*, No. 12-2294-JWB; *NECA-IBEW Pension Trust Plan v. Hesse, et al.*, No. 12-2336-JWB; and *Robaczynski v. Hesse et al.*, No. 12-2354-JWB. *See* Doc. 33. The consolidated Plaintiffs named in the amended complaint are: Terry Pagano, *Trustee of the 1996 Irrevocable Trust for the Benefit of Terri Pagano*; NECA-IBEW Pension Trust Plan; and Michael Hartlieb. (Doc. 82-1 at 6.) All three were shareholders of Sprint Nextel Corporation during the relevant time period and remain current shareholders. (*Id.* at 6.) As the result of a merger in 2013, Sprint Nextel Corporation changed its name to Sprint Communications, Inc. (*Id.* at 7.)
[2] Daniel R. Hesse, James H. Hance, Jr., Robert R. Bennett, Gordon Bethune, Larry C. Glasscock, V. Janet Hill, Frank Ianna, Sven-Christer Nilsson, William R. Nuti, and Rodney O'Neal. (Doc. 96 at 4.)
[3] For purposes of the instant motions, the court will consider Docs. 98-1 and 99-1 as Plaintiffs' responses.
[4] Plaintiffs filed a redacted version of the amended complaint. (Doc. 81.) They were granted leave to file the unredacted version under seal (*see* Doc. 87), but they neglected to separately file it. Nevertheless, the court will consider the sealed version, which was filed as an attachment (Doc. 82-1), as the operative complaint.

Ten individuals who serve or have served on Sprint's Board of Directors are named as Defendants (hereinafter "the Individual Defendants.") The Individual Defendants allegedly owed the Company a duty to exercise a high degree of due care, loyalty, and diligence in the management and administration of the affairs of Sprint, including conducting its business in an ethical and legal manner. (Doc. 82-1 at 6-8.) In essence, Plaintiffs allege that Defendants breached their duties by knowingly or recklessly causing or allowing Sprint to violate New York State's tax laws pertaining to the sale of wireless voice services.

During the relevant period - July 2005 to April 2012 - Sprint sold wireless calling plans that included voice services for either a set or unlimited number of minutes, in exchange for fixed monthly charges. The fixed monthly charges were billed to customers regardless of whether they actually used the network and regardless of whether calls were made to people or phones within the same state (intrastate calls) or outside the state (interstate calls). (*Id.* at 13.) Sprint billed for calls on a per-minute basis only if the minutes used exceeded the number of minutes allowed under the plan. Calls within the number of minutes allowed were not billed on a per-minute basis. (*Id.*)

According to the complaint, since August of 2002, New York State (and localities within the State) required the payment of sales taxes on the full amount of fixed monthly charges for wireless voice services sold to customers in New York.[5] (*Id.* at 14.) Sprint, as the provider of the

---

[5] The legal background was explained in the related case of *People ex rel. Schneiderman v. Sprint Nextel Corp.,* 42 N.E.3d 655 (N.Y. 2015). In 1989, the United States Supreme Court limited states' authority to tax interstate telephone calls by holding that a state could only tax a call if it originated or terminated in the state and was charged to an in-state address. *Id.* at 657 (citing *Goldberg v. Sweet,* 488 U.S. 252 (1989)). This rule subsequently became problematic with the spread of mobile phones, with calls sometimes being subject to taxation by multiple jurisdictions, and with the advent of flat-rate voice plans, which made it difficult to determine which mobile calls to tax. This prompted Congress to enact the Mobile Telecommunications Sourcing Act, 4 U.S.C. § 116 et seq., which adopted a "sourcing" rule that said the only state that can impose a sales tax on calls is the state of the customer's place of primary use. *Id.* In 2002, the New York legislature adopted amendments dealing with the State's treatment of voice services sold through flat-rate plans. As a result, Section 1105(b) of the New York Tax Law provided that sales tax should be paid on:

"(1) [t]he receipts from every sale … of the following: …(B) [telephony and telephone service] of whatever nature except interstate and international … [telephony and telephone service] and except any telecommunications service the receipts from the sale of which are subject to tax under paragraph two of this subdivision…

2

services, was required to collect the sales taxes from customers and pay them to the State. The New York sales tax provision applied to sales of mobile telecommunications services "that are voice services … sold for a fixed periodic charge (not separately stated), whether or not sold with other services." (*Id.*) Plaintiffs allege this law required the payment of sales taxes on the full amount of fixed periodic charges for wireless voice services sold by Sprint to its customers in New York.

A guidance memorandum issued in 2002 by the New York State Department of Taxation & Finance included an example of a customer who buys a cellular calling plan that provides up to 2500 minutes for a flat-rate charge of $49.95 per month. The memorandum said that if the customer did not exceed the calling minutes allowed, and was charged $49.95 for the month, "[s]uch charge is subject to sales tax under [the New York law], regardless of whether the calls made under the plan were intrastate, interstate, or international calls." (*Id.* at 15.) If the customer exceeded the allowed minutes, the $49.95 flat rate was subject to New York sales tax, as were any separate charges for intrastate calls included in the excess minutes, but separate charges for interstate or international calls included in the excess minutes were not subject to New York sales tax. (*Id.* at 16.)

New York tax rules generally provided that if one service in a bundle was subject to sales tax if sold on its own, the charge for the entire bundle was subject to sales tax. But a wireless carrier could "unbundle" the charge for a service, such as internet access services, that would not be subject to sales tax if sold on its own. Thus, if a customer purchased both cellular telephone service and internet access in a bundle, the provider could "unbundle" the internet access portion

---

(2) The receipts from every sale of mobile telecommunications service provided by a home service provider … that are voice services, or any other services that are taxable under subparagraph (B) of paragraph one of this subdivision, sold for a fixed periodic charge (not separately stated), whether or not sold with other services."

of the charge and not pay sales tax on that portion. This was referred to as "component taxation." The provider could do this so long as the services were not for voice services and the provider used an objective, reasonable and verifiable standard for identifying each of the components of the bundled charge. (*Id.* at 17.)

Plaintiffs allege that beginning in July 2005, Defendants knowingly caused or recklessly allowed Sprint to implement a nationwide program of unbundling its wireless offerings for sales tax purposes. (*Id.* at 18.) As part of the program, Sprint allegedly began treating part of its fixed monthly access charges for voice services as if it were charges for interstate calls on a per-minute basis and, in states like New York, it began not collecting or paying sales tax on those charges. (*Id.*) Prior to unbundling its wireless calling plans in this manner, Sprint classified the full amount of its monthly access charges for wireless voice services as "network access." But when it implemented its unbundling program, Sprint began classifying part of the fixed monthly access charge as "usage airtime: interstate," which caused that portion to be treated as non-taxable under New York sales tax laws, even though Defendants allegedly "knew that this did not comport with New York tax law." (*Id.* at 21.) Plaintiffs allege the percentage figures Sprint used to divide the charge between "network access" and "usage airtime: interstate" varied by calling plan and over time in an arbitrary and inconsistent manner. (*Id.* at 22.) As a result of this classification, Sprint excluded about one fourth of its fixed monthly voice service charges to New York customers from its calculation of New York sales taxes. Defendants allegedly thereby caused Sprint to underpay New York State and local sales taxes of more than $100 million and subjected Sprint to liability including substantial penalties and interest. Plaintiffs allege that Sprint's approach "was and is unequivocally illegal" under New York law and that the Individual Defendants participated in or failed to prevent the wrongdoing. (*Id.* at 19, 23.)

A *qui tam* plaintiff filed suit in New York state court under the New York False Claims Act on March 31, 2011, alleging that Sprint illegally avoided its New York sales tax obligations. The New York Attorney General ("NYAG") intervened in that action in 2012. (*Id.* at 2-3.) On December 21, 2018, the NYAG announced that Sprint had agreed to pay $330 million in settlement of the suit. (*Id.* at 25.)

Count I of the amended complaint alleges breaches of fiduciary duties against the Individual Defendants. It alleges the Individual Defendants acted knowingly, or in reckless disregard of facts they should have known through reasonable inquiry, such that they are responsible for the mismanagement of Sprint in the following respects: they allowed or participated in a scheme to evade the payment of state and local taxes; they concealed that fact from shareholders and the public; they subjected Sprint to adverse publicity and liability that impaired its earnings and caused a $330 million settlement; and they failed to implement reporting or monitoring procedures that would have alerted them to the Company's change in tax policy, to the qui tam action, or to the fact that New York taxing authorities disagreed with Sprint's tax position. (*Id.* at 41.) Count II of the amended complaint alleges that the Individual Defendants were unjustly enriched at the expense of and to the detriment of Sprint. Plaintiffs seek both damages and equitable relief. (*Id.* at 43.)

Demand futility. The amended complaint alleges that Plaintiffs have not made any demand on Sprint's Board of Directors to institute this action because such a demand would be futile.[6] (Doc. 82-1 at 38.) It alleges, among other things, that the Individual Defendants' actions show bad faith and could not be the product of sound business judgment; that the Individual Defendants

---

[6] The amended complaint alludes to "a stockholder litigation demand dated August 16, 2012" (Doc. 82-1 at 37), but does not otherwise include allegations about that demand. Nor do Plaintiffs argue that the demand precondition has been satisfied. Rather, they contend that a shareholder demand made in another action does not negate their demand futility claim. (Doc. 98-1 at 2.)

participated in or approved of the wrongful acts or omissions, that they did so knowingly and concealed their actions from outside detection; and they cannot be relied on to independently decide whether to commence and vigorously prosecute the demanded actions against themselves. (*Id.* at 39.) Further, even if the Individual Defendants would otherwise be protected against personal liability by officers and directors liability insurance, these policies "may contain provisions that eliminate coverage for any action brought directly by Sprint against these defendants … [under an] 'insured versus insured exclusion,'" such that the Individual Defendants would not bring such a suit. (*Id.* at 40.)

## II. Motion to Dismiss Standards

Sprint argues in its motion to dismiss that the preclusive effect of a prior judgment bars this action. It additionally argues Plaintiffs have failed to adequately plead or establish demand futility. (Doc. 97 at 2.) The Individual Defendants adopt these same arguments and further contend a derivative action is precluded because a different shareholder made a demand on the Board of Directors and the Board decided not to pursue the claims. They also argue Count II fails to state a claim for unjust enrichment against the Individual Defendants. (Doc. 96 at 4-5.)

    a. Rule 12(b)(6). In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007). Plaintiff must "allege enough factual allegations in the complaint to set forth a plausible

6

claim." *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1172 (10th Cir. 2015) (internal citations omitted). In the end, the issue is not whether Plaintiff will ultimately prevail, but whether Plaintiff is entitled to offer evidence to support her claims. *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).

      b. Rule 23.1. Federal Rule of Civil Procedure 23.1 imposes pleading requirements when a shareholder seeks to bring a derivative action to enforce a right belonging to a corporation. In such a case, the complaint must state with particularity "any effort by the plaintiff to obtain the desired action from the directors" and "the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b). Because the cause of action belongs to the corporation, shareholders typically must, as "a precondition for the suit," make a pre-suit demand on the board of directors to pursue the litigation, "unless excused by extraordinary conditions." *City of Cambridge Ret. Sys. v. Ersek,* 921 F.3d 912, 918 (10th Cir. 2019). Consistent with this requirement, Rule 23.1 establishes the above pleading requirements, although whether the complaint's allegations suffice to excuse the lack of a demand depends upon the substantive law of the state in which the entity is incorporated. *Id.*

      c. Res judicata (claim preclusion). Certain federal procedures apply when res judicata is raised in federal court. Because res judicata is an affirmative defense, the burden of proof rests with the defendant. *See Mir v. Brown,* No. 15-9097-JAR, 2019 WL 2137285, at *5 (D. Kan. May 16, 2019). A defendant may raise such a defense by a motion to dismiss for failure to state a claim, and the defense can be presented on records from prior cases involving the same parties. *Id.* (citations omitted.) "The court may 'take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand.'"

*Id.* (quoting *United States v. Ahidley,* 486 F.3d 1184, 1192, n.5 (10th Cir.), *cert. denied,* 552 U.S. 969 (2007)).

As for the substantive law of res judicata, federal common law governs the preclusive effect of a prior dismissal by a federal court sitting in diversity. *Semtek Intern. Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). But federal law in turn ordinarily applies "the law that would be applied by state courts in the State in which the federal diversity court sits." *Id.* Because Defendants invoke the preclusive effect of a diversity-based judgment of a federal district court in New York – *La. Mun. Police Emp. Ret. Sys. v. Hesse,* 962 F. Supp. 2d 576 (S.D. N.Y. 2013) ("*LAMPERS*") – the court applies New York law in determining the preclusive effect of the *LAMPERS* judgment. *See Semtek,* 531 U.S. at 509 (effect of judgment by California federal district court sitting in diversity is determined from California's law of claim preclusion).

In New York, res judicata (also called claim preclusion[7]) bars successive litigation based upon the same transaction or series of connected transactions if: (1) there is a judgment on the merits rendered by a court of competent jurisdiction; and (2) the party against whom the doctrine is invoked was a party to the previous action or in privity with such a party. *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 894 N.E.2d 1, 12 (N.Y. 2008) (citations omitted.) It "precludes a party from litigating 'a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter.'" *Josey v. Goord,* 880 N.E.2d 18, 20 (2007) (citation omitted.) The bar extends to issues that were or could have been raised in the prior litigation. *See Adventurers Whitestone Corp. v. City of New York,* 479 N.E.2d 241, 145 (N.Y. 1985).

---

[7] "Strictly speaking, collateral estoppel is issue preclusion, and res judicata [is] claim preclusion." *David v. State,* 18 N.Y.S.3d 578 (Table), 2015 WL 3774671, at *4 (N.Y. Ct. Cl. May 13, 2015).

The preclusive effect of a judgment also includes the related concept of issue preclusion, more commonly called collateral estoppel. *Paramount Pictures Corp. v. Allianz Risk Transfer AG,* 96 N.E.3d 737, 743 (N.Y. 2018). *See also American Ins. Co. v. Messinger,* 371 N.E.2d 798, 801 (N.Y. 1977). "Collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue raised in a prior action or proceeding and decided against that party or those in privity." *Buechel v. Bain,* 766 N.E.2d 914, 919 (N.Y. 2001). "There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and there must have been a full and fair opportunity to contest the decision now said to be controlling." *Id.* (citation omitted). Unlike claim preclusion, collateral estoppel will bar relitigation of the same issue in a subsequent action even if the two suits are based on distinct transactions or causes of action. *See Ryan v. New York Tel. Co.*, 467 N.E.2d 487, 490 (N.Y. 1984).

### III. Analysis

As indicated above, a shareholder demand on a board of directors is ordinarily a precondition for filing a derivative action. At common law, the dismissal of an action for failure to satisfy a precondition does not bar all subsequent litigation of the claim. Thus, "a valid and personal final judgment for the defendant, which rests on the prematurity of the action or on the plaintiff's failure to satisfy a precondition to suit, does not bar another action by the plaintiff *instituted after the claim has matured, or the precondition has been satisfied*, unless a second action is precluded by operation of the substantive law." *Restatement (Second) of Judgments* § 20 (emphasis added.) But Plaintiffs here do not allege that the demand precondition has been satisfied. They allege – as did the plaintiffs in *LAMPERS* – that the precondition is excused because it would have been futile to make a demand on the Board of Directors. The fact that Plaintiffs are alleging the same grounds for excuse of the precondition that were rejected in a prior

9

judgment distinguishes this case from the principle set forth in *Restatement (Second) of Judgments* § 20.

A final judgment based on a failure to establish demand futility, under New York law, has preclusive effect on a subsequent suit similarly alleging demand futility. *See In Re JPMorgan Chase Derivative Litig.*, No. 17-Civ-5066-JFK, 2018 WL 2305564, at *4-5 (S.D. N.Y. May 21, 2018) ("The Court agrees that Plaintiffs' claims are barred by res judicata based on the demand futility dismissal in *Steinberg*.") Applying New York law, the court in *JPMorgan Chase* determined that a prior dismissal for failure to adequately allege demand futility was a final judgment on the merits for purposes of res judicata. *Id.* at *4. It further found the plaintiffs in both actions, as shareholders asserting the claims on behalf of the corporation, were in privity with each other. *Id.* (citing *City of Providence v. Dimon,* No. CV 9692-VCP, 2015 WL 4594150, at *7 (Del. Ch. July 29, 2015) ("Under New York law, a later stockholder asserting derivative claims on behalf of a corporation is considered to be the 'same plaintiff' as a different stockholder asserting those claims on behalf of the corporation in a separate action.")) It further found privity with respect to the defendants, despite minor differences in the directors named in the two cases, noting there was no allegation that three defendants added in the second suit were unavailable or not adequately represented in the first suit. *Id.* Finally, the court found both cases arose from the same transaction or series of transactions notwithstanding some differences in the allegations of each. *Id.* at *5 ("the final inquiry of the res judicata analysis is not whether the claims in *Steinberg* are factually identical, but whether they arise from the same basic series of events.") The court thus dismissed the second suit as barred by res judicata. *Id.* at 6.

The three elements of claim preclusion under New York law are similarly satisfied here. As to the first element, *LAMPERS* is a final judgment on the merits rendered by a court of

competent jurisdiction. In *LAMPERS*, a federal district court in New York, sitting in diversity, addressed a nearly identical derivative claim asserted by other Sprint shareholders. The court dismissed the action based on the shareholders' failure to establish demand futility. The court ruled that "Plaintiffs have failed to show reasonable doubt that a majority of the Directors would have been unable to exercise disinterested and independent business judgment while conducting a good faith investigation into the misconduct Plaintiffs allege." *LAMPERS*, 962 F. Supp. 2d at 591.[8] This ruling on demand futility is considered a judgment on the merits under New York law for purposes of res judicata. *JPMorgan Chase*, 2018 WL 2305564, at *4; *Wietschner ex rel. JPMorgan Chase & Co. v. Dimon,* 32 N.Y.S.3d 77, 79 (N.Y. App. Div. 2016) ("The dismissals for failure to adequately allege demand futility were on the merits and entitled to res judicata effect…") (citations omitted); *Tap Holdings, LLC v. Orix Fin. Corp.*, 970 N.Y.S.2d 178, 185 (N.Y. App. Div. 2013) ("to the extent the previous decision was on the merits, such merits extend only to the propriety of the derivative action, and not to the propriety of an action actually taken by [the company].")

As to the second element, Plaintiffs, as Sprint shareholders seeking to assert a claim derivatively on behalf of the corporation, are considered to be in privity with the shareholders in *LAMPERS* who asserted a similar claim. *In re JPMorgan Chase,* 2018 WL 2305564, at *4; *City of Providence*, 2015 WL 4594150, at *7; *Parkoff v. Gen. Tel. & Elec. Corp.*, 442 N.Y.S.2d 432, 436 (N.Y. 1981) ("Because the claim asserted in a stockholder's derivative action is a claim belonging to and on behalf of a corporation, a judgment rendered in such an action brought on behalf of the corporation by one shareholder will generally be effective to preclude other actions predicated on the same wrong brought by other shareholders….") As to the third and final element,

---

[8] The plaintiffs in *LAMPERS* filed an appeal, but the appeal was subsequently withdrawn. *LAMPERS,* 962 F. Supp. 2d 576 (S.D.N.Y. 2013), *appeal withdrawn* (2d Cir., No.13-3206 Nov. 20, 2013).

11

the *LAMPERS* suit was clearly based on the same transaction or series of transactions as the instant suit. A review of the allegations in *LAMPERS* shows the claim was based on the same unbundling of voice and internet services by Sprint in New York that forms the basis of the claims in this case. *See e.g. LAMPERS,* 962 F. Supp. 2d at 582 (court noting that "Plaintiffs claim the Directors breached their fiduciary duties by allowing the company to take its allegedly illegal tax approach under New York law to unbundling certain voice services from the flat rate access charge for wireless calling plans.")

Plaintiffs advance two reasons why claim preclusion does not apply here. (Doc. 99-1 at 10.) First, they argue *LAMPERS* is not preclusive because that lawsuit was filed on the same day as the instant case (April 30, 2012), and claim preclusion only bars "successive litigation" or a "later" claim. (*Id.* at 10-11.) This argument misconceives the basis of claim preclusion. It is the entry of a final judgment in another action, not the filing of the case, that precludes entry of a second judgment upon the same claim. *See Restatement (Second) of Judgments* § 14 ("For purposes of res judicata, the effective date of a final judgment is the date of its rendition, without regard to the date of commencement of the action in which it is rendered or the action in which it is to be given effect.") "Thus when two actions are pending which are based on the same claim … it is the final judgment first rendered in one of the actions which becomes conclusive in the other action …, regardless of which action was first brought." *Id.*, cmt. a. *See also Gonzalez v. City of New York,* 396 F. Supp. 2d 411, 415, n.3 (S.D. N.Y. 2005) ("the fact that Plaintiffs began the instant action prior to the resolution of the [other case] has no effect on the application of the res judicata doctrine….")

Plaintiffs' second argument is that claim preclusion is inapplicable because the amended complaint alleges facts and theories the plaintiffs in *LAMPERS* did not assert. Plaintiffs say they

12

have alleged "additional details and facts based upon subsequent events that could not have been alleged in *LAMPERS* demonstrating that Defendants, in fact, knew the Company was pursuing an illegal tax strategy." (Doc. 99-1 at 18.) They have also alleged that the Board failed in its fiduciary duty to monitor "important legal developments such as the fact that the [Attorney General] had affirmatively informed Sprint that it was violating NY law." (*Id.* at 19.) Additionally, Plaintiffs "allege a cause of action based upon unjust enrichment, which was not alleged in the *LAMPERS* action." (*Id.*) None of these arguments is availing. The plaintiffs in *LAMPERS* alleged, as Plaintiffs do here, that Sprint's Board acted with knowledge that the company's tax approach was contrary to New York law. *LAMPERS*, 962 F. Supp. 2d at 581 ("According to Plaintiffs, Sprint knew, or should have known, its tax strategy was illegal by 2009.") *See also id.* at 584 ("Plaintiffs assert the *Aronson* test is inapplicable because Defendants knowingly or recklessly failed to prohibit Sprint from implementing the allegedly illegal tax strategy.") Plaintiffs cite no New York law for the proposition that their gathering of additional evidence of the Board's alleged knowledge nullifies the preclusive effect of a prior final judgment wherein the same allegation was found insufficient to excuse demand. If that were in fact the rule, no judgment on demand futility would likely be preclusive, as additional evidence inevitably emerges over time. *Cf. Henik ex rel. LaBranche & Co. v. LaBranche*, 433 F. Supp. 2d 372, 380–81 (S.D.N.Y. 2006) (if ruling on demand futility were not preclusive, "shareholder plaintiffs could indefinitely relitigate the demand futility question in an unlimited number of state and federal courts, a result the preclusion doctrine specifically is aimed at avoiding.") New York law plainly gives preclusive effect to such rulings. *See Wietschner ex rel. JPMorgan Chase,* 32 N.Y.S.3d at 79 ("The dismissals for failure to adequately allege demand futility were on the merits and entitled to res judicata effect….")

Even assuming a substantial change in circumstances can sometimes permit the setting aside or modification of a judgment if justice requires it, Plaintiffs' allegations concerning the Individual Defendants' knowledge do not rise to that level. As Defendants point out, Plaintiffs allege generally that "Sprint" knew its conduct was illegal, while at the same time alleging that the Board was not informed of Sprint's decision to change to component sales-taxing until a May 2012 meeting when it learned of the New York Attorney General lawsuit. (Doc. 82-1 at 38.) Plaintiffs' allegations concerning knowledge do not negate the bar of res judicata. Nor does the fact that Plaintiffs have added new theories or sought additional relief such as unjust enrichment suffice to avoid the preclusive effect of the *LAMPERS* judgment. Under New York law, "[a]s a general rule, 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Parker v. Blauvelt Vol. Fire Co., Inc.*, 690 N.Y.S.2d 478, 481 (N.Y. 1999). In sum, Plaintiffs' action is based on the same transactions challenged in *LAMPERS*, Plaintiffs are in privity with the plaintiffs in that action, and *LAMPERS* represents a final judgment that bars relitigation of Plaintiffs' demand futility claim in this action.

The court notes that most of the New York cases cited above relied on the doctrine of claim preclusion rather than collateral estoppel. Some New York cases, however, appear to have resorted to collateral estoppel in determining whether a prior ruling on demand futility has preclusive effect. *See e.g., Levin ex rel. Tyco Intern. Ltd. v. Kozlowski,* 2006 WL 3317048, at *7, 831 N.Y.S.2d 354 (Table) (N.Y. App. Div. Nov. 14, 2006). Even if collateral estoppel rather than claim preclusion provides the appropriate standard under New York law, the court finds that collateral estoppel also bars relitigation of demand futility in this action. The record shows that the issues decided in *LAMPERS* and this case are identical and that the shareholders in *LAMPERS* had a full and fair

opportunity to litigate the issue. Plaintiffs argue the issues decided in the two cases are not identical because of "changes in facts and law which were essential to the earlier judgment…." (Doc. 99-1 at 21.) Plaintiffs argue the facts changed after *LAMPERS* because "Sprint was found to have knowingly violated tax laws…." (*Id.*) The "findings" cited to by Plaintiffs, however, consist of a comment and a press release by the New York Attorney General accusing Sprint of knowingly violating the law. (Doc. 82-1 at 26 (¶93), 35 (¶129).) That is not a material change in circumstances that warrants relitigation of the demand futility issue. Nor does the fact that Sprint settled the NYAG lawsuit for $330 million after the *LAMPERS* ruling, standing alone, constitute any sort of finding that the Individual Defendants acted in knowing violation of the law. It does not show that the issue decided in *LAMPERS* and in this case are not the same or that the *LAMPERS* plaintiffs did not have a full and fair opportunity to litigate the issue.

Plaintiffs also argue the law changed after *LAMPERS* because of a Delaware Supreme Court ruling – *Marchand v. Barnhill*, 212 A.3d 805 (Del. 2019) – that "for the first time made clear … that a board of directors that failed to establish oversight procedures for their company's mission critical functions can be held liable for breach of their *Caremark* duties."[9] (Doc. 99-1 at 22.) The court fails to see how *Marchand* fundamentally altered the law such that Plaintiffs should not be bound by the *LAMPERS* ruling. A *Caremark* claim is based on directors having "consciously and in bad faith failed to discharge their fiduciary obligations." *City of Cambridge Ret. Sys. v. Ersek,* 921 F.3d 912, 920 (10th Cir. 2019). It "requires particularized allegations that the board (i) 'utterly failed to implement any reporting or information system or controls' or (ii) 'having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their

---

[9] *In re Caremark Int'l. Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996).

attention.'" *Id.* (citations omitted.) *Marchand* found that a stockholder adequately alleged a *Caremark* claim against directors who failed to monitor the food safety performance and compliance of the company's ice cream production, thereby leading to a listeria outbreak and safety recalls of the company's products. *Marchand,* 212 A.3d at 821-22. The decision does not contain any sort of landmark shift in the law that undermines *LAMPERS*. *Marchand* itself indicated the result was dictated by the court's prior precedents – specifically *Caremark* and *Stone v. Ritter,* 911 A.2d 362 (Del. 2006) – both of which were considered by the *LAMPERS* court in reaching its conclusion on demand futility. *See Marchand,* 212 A.3d at 820; *LAMPERS,* 962 F. Supp. 2d at 588.

The record shows an identity of issues between *LAMPERS* and the instant case insofar as demand futility is concerned. *LAMPERS* further shows the plaintiffs in that action had a full and fair opportunity to litigate the issue. Because the elements of collateral estoppel are satisfied, Defendants are entitled to dismissal of the action on the basis of collateral estoppel in addition to the reasons previously stated. In view of the court's determination that the action must be dismissed on these grounds, the court does not reach the other issues asserted by the parties.

**IV. Conclusion**

The motions to dismiss of Sprint (Doc. 88) and the Individual Defendants (Doc. 91) are GRANTED. Based on the court's determination that res judicata bars Plaintiffs' assertion that it would have been futile to demand that Sprint's Board of Directors bring the action, the action (including lead case No. 12-2242 and member cases Nos. 12-2266, 12-2294, 12-2336, and 12-2354) is DISMISSED for failure to state a claim upon which relief can be granted.

IT IS SO ORDERED this 3rd day of February, 2020.

     s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE